UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| In re | ) Case No. 19-12388-B-13 |
| | ) |
| **CHRISTOPHER A. MILAUCKAS and** | ) DC No. DRJ-2 |
| **LAURIE MILAUCKAS,** | ) |
| | ) Date: November 19, 2019 |
| | ) Time: 1:30 p.m. |
| Debtor. | ) Department B, Judge Lastreto |
| | ) Fifth Floor, Courtroom 13 |
| | ) 2500 Tulare Street, Fresno, CA |
| | ) |

**RULING ON DEBTORS' MOTION TO VALUE COLLATERAL
OF WEST COAST CAPTIAL GROUP AND JOHN COONIS**

INTRODUCTION

Chapter 13 debtors Christopher and Laurie Milauckas ("Debtors") ask the court to evaluate the value of their residence in Tulare, California so they can confirm their Chapter 13 Plan. Under their Plan, they propose to treat the beneficiary of the second deed of trust encumbering their residence, West Coast Capital Group, Inc. and John Coonis ("Respondents") as unsecured.[1] After having considered the exhibits, which have been admitted without objection, the submitted declarations and the testimony at the evidentiary hearing, the court values the residence at $130,000.00 and grants the Debtors' motion to value.

///

///

---

[1] This means "stripping off the junior lien" in bankruptcy patois.

PERTINENT FACTS

The only contested issue in this motion is the value of the bankruptcy estate's interest in the Debtors' residence. But for context and important background, the following facts are undisputed:

- When the Debtors filed their Chapter 13 case in June 2019, they proposed a Chapter 13 Plan.
- The Debtors' residence is 762 Alpha Street, Tulare, California ("Alpha Property").
- The Debtors own the fee interest in the Alpha Property. So, the fee interest is the estate's interest in the Alpha Property.
- The estate's interest is encumbered by two deeds of trust. The beneficiary of the first deed of trust is the Bank of New York Mellon f/k/a, the Bank of New York as trustee for CWABS, Inc. asset-backed certificates, series 2004-7. This creditor filed a proof of claim in the amount of $148,119.45.
- Respondents are the beneficiaries of the second deed of trust. Respondents have filed a proof of claim in the amount of $179,531.74.
- No evidence was presented that the Debtors have moved from their residence and for purposes of this motion, the Alpha Property is their principal residence.
- The Alpha Property was the Debtors' residence when the bankruptcy case was filed. The purpose of the valuation asked in this motion is to pursue confirmation of the Debtors' Chapter 13 Plan.

- The proposed use of the property is the residence of the Debtors.

## THE EVIDENTIARY HEARING

The evidentiary hearing on this motion was held November 19, 2019. The Debtors and the Respondents were each represented by counsel. The court ordered the hearing to proceed under the "Alternate Direct Testimony Procedure" authorized by Local Rule of Practice 9017-1. The Debtors called two witnesses: Michael Toomey, a residential and commercial real estate appraiser ("Toomey") and Diane Biehle, an appraising associate under Toomey's supervision ("Biehle"). Respondents' called one witness: Rodney J. Palmer, a certified residential real estate appraiser employed by Tony G. Palmer Appraisal Company ("Palmer"). Here is the summary of the testimony.

Toomey Testimony

Toomey has been a licensed appraiser for more than 14 years and has been in the business for approximately 20 years. For the past two months, he has been self-employed. Biehle is his associate and has worked with Toomey for a little over four years. Biehle "developed" an appraisal dated March 14, 2019 which concluded that the value of the Alpha Property was $130,000.00. In addition to an inspection, Biehle reviewed the comparable sales.

All the appraisers agreed that the closest comparable sale for the relevant period was a residence located a tenth of a mile from the Alpha Property: 843 Milner Street in Tulare

("Milner Property"). The Milner Property was purchased by an investor who significantly refurbished and "flipped" the Milner Property. Toomey reviewed three other comparable sales all within in a tenth of a mile or less of the Alpha Property. The Milner Property was purchased by the investor between five and six months before Toomey's March 2019 appraisal.

The Milner Property proved crucial to both the Toomey and Palmer appraisals because of the similarity of the residences and the property's comparable condition. A month and a half before the hearing, Toomey and Biehle spoke with the purchaser of the Milner Property who told them he invested over $50,000.00 to refurbish the Milner Property before its sale for $205,000.00. Toomey personally inspected the Alpha Property then and noted several conditions requiring remodeling or repair including possible wood rot in an upstairs bathroom. Toomey also reviewed a home inspection report conducted by H & L Home Inspections. The inspection was conducted about three weeks before the hearing. The inspection revealed exterior evidence of wood rot and water intrusion. The shake roof reflected excessive moss or algae and appeared to be at the end of its useful life. Sunlight was visible through the roof from the attic. Discoloration was noted in the upstairs bathroom as well as a broken shower pan. The report also discussed cracks in the fireplace and other signs of deterioration in the immediate area.

Toomey testified that the seller of the Milner Property confirmed that the Milner Property was the same age as the Alpha Property and was the same model. Toomey also testified he

estimated the Alpha Property would require between $40,000.00 and $50,000.00 of improvements because of its poor condition. He confirmed that none of the comparable sales (with the exception of the earlier sale of the Milner Property before refurbishment) involved properties in the same condition as the Alpha Property.

Though he had a lot of experience, Mr. Toomey's demeanor as a witness suggested he was unsure of many basic facts. For example, he needed to "look-up" the address of the Alpha Property. He relied heavily on his notes when testifying. His declaration revealed that he had reviewed the Palmer appraisal and noted that Palmer adjusted his refurbishment estimate upward after Palmer inspected the interior of the Alpha Property. Toomey also appeared unsure of the condition of some of the important aspects of the Alpha Property, including the condition of the fireplace, shower pan, roof, and other conditions.

Biehle Testimony

Biehle has been involved in the appraisal business for approximately five years and acknowledged that she prepared most of the components of the Toomey appraisal. Biehle and her husband — a retired contractor — buy homes, repair and remodel, and resell approximately 1-2 times a year. So, she appears to have a grasp of the extended repairs necessary to refurbish the Alpha Property. She noted a few conditions of the Alpha Property which were not present in the Milner Property after consultation with the Milner Property's former owner. Those included: a crumbling fireplace, dry rot, and a leaning fence. Biehle confirmed that though the comparable sales in the Toomey

appraisal (other than the Milner Property) range from
$192,000.00 to $201,000.00, all of those properties were in
superior condition to the Alpha Property.

Biehle's demeanor as a witness was candid and responsive.
She demonstrated a more working knowledge of the condition of
the Alpha Property which could be due to her more "hands-on"
inspection compared to Toomey. Her experience with her husband
in purchasing and reselling homes was not challenged by the
respondents and her methodology for determining refurbishment
costs seemed reasonable.

Palmer Testimony

Palmer conducted two appraisals of the Alpha Property. The
first was an exterior only inspection in July 2019. The second
was in early September 2019. He, too, used some of the same
comparable sales. He reviewed more comparable sales than the
Toomey appraisal. The comparable sales included properties
located less than a tenth of a mile from the Alpha Property to
slightly over one mile from the property. The comparable sales
ranged from $190,000.00 to $205,000.00. One of the $205,000.00
comparable sales is the Milner Property after refurbishment.
Palmer noted the properties at the higher end of the comparable
sales were recently refurbished.

Palmer's July 2019 exterior only appraisal of the Alpha
Property was for $180,000.00. Palmer's interior inspection
showed some of the conditions relating to the damage in the
bathroom, damaged exterior siding, range and oven repair, and
ceiling repair in the laundry room and garage. Based on his

interior inspection, Palmer revised downward his earlier
appraisal to $170,000.00. Palmer initially questioned the
validity of using the Milner Property sale as a comparable
because Palmer concluded the sale to the previous owner was an
"REO sale."[2] Palmer estimated that it would cost $12,500.00 to
repair the Alpha Property including roof, bathroom, siding,
kitchen, and ceiling repair. That is far less than the
Toomey/Biehle opinion that over $50,000.00 of repair was
necessary. Palmer did submit a supplemental declaration in which
he corrected a statement made in his earlier declaration that
REO sales are made without an opportunity to conduct an interior
inspection. His correction was that the Milner Property was
listed on the multiple listing service before the REO sale and
potential buyers had the opportunity to inspect the property.
But he reaffirmed his opinion that the $130,000.00 purchase of
the Milner Property by the former owner is not an appropriate
comparable sale for valuation of the Alpha Property.

   Palmer has over 20 years' experience in residential
appraisals. He appeared knowledgeable, but his testimony at
times was confusing and disengaged. For example, he seemed to
rely on his value conclusion for the Alpha Property based on the
exterior only appraisal — $180,000.00. But his later appraisal
after an interior inspection concluded the value of the Alpha
Property was $170,000.00. He also testified that the $180,000.00
value estimate was after sufficient repairs were made so a buyer
could obtain a loan to purchase the Alpha Property. He testified
that he had no opinion on the value of the Alpha Property "as it

---

[2] "REO" means real estate owned.

sits." This meant that most of his testimony was irrelevant. He also had difficulty recalling the basis of his estimates for repair. After reviewing his notes, he repeated his estimate for refurbishing the Alpha Property which was substantially less than estimated by Toomey/Biehle. He did not offer testimony explaining the difference. During his live testimony, Palmer testified the purchase of the Milner Property by the former owner for $130,000.00 was a "pre-foreclosure not REO" purchase. He reiterated that because a "pre-foreclosure" sale was a distressed sale and not at arm's length. On the other hand, he did not significantly discount the $205,000.00 resale price for the Milner Property after refurbishment. Palmer confirmed that none of the properties in his comparable sale analysis were in the same condition as the Alpha Property. He also testified that his estimates of repair largely came from the "recognized handbook" Marshall & Swift. He consulted the handbook for roof repair estimate. He also discussed potential repair costs with an acquaintance who is a contractor. But Palmer admitted he did not discuss shower pan repair or much of the additional work necessary to refurbish the Alpha Property with the contractor. At the conclusion of his testimony, it was unclear whether Palmer would discount his $180,000.00 appraised value by $15,000.00 or not.

<u>ANALYSIS</u>

1.    <u>Legal basis to determine value.</u>

The value of the bankruptcy estate's interest in the Alpha Property is critical to the treatment of Respondents' claim

under the Chapter 13 Plan and Debtors' success in performing the Plan. In this circuit, wholly unsecured second liens on a principal residence may be avoided because the "secured" claim is not really a "secured" claim under 11 U.S.C. § 506(a). <u>Zimmer v. PSB Lending Corp. (In re Zimmer)</u>, 313 F.3d 1220 (9th Cir. 2002). So, if the court finds that the Alpha Property is worth less than or equal to the balance owed on the claim secured by the first deed of trust — approximately $148,000.00 — Respondents' claim is wholly unsecured and the Debtors can modify or avoid the secured claim. On the other hand, if the court finds that the value of the Alpha Property is greater than what is owed the beneficiary of the first deed of trust, the Debtors cannot modify Respondents' claim. 11 U.S.C. § 1322(c).

A bankruptcy court's valuation of a debtor's property is a finding of fact that is reviewed for clear error. <u>Pletz v. United States (In re Pletz)</u>, 221 F.3d 1114, 1116 (9th Cir. 2000). The same is true of credibility determinations. <u>In re Ashley</u>, 903 F.2d 599, 606 (9th Cir. 1990) (quoting <u>United States v. Lummi Indian Tribe</u>, 841 F.2d 317, 319 (9th Cir. 1988)). The Debtors initially bear the burden here in overcoming the presumption that the value of the property stated in the creditor's claim is the correct value. After the Debtors meet that burden it shifts to the creditor to show the value of the property by a preponderance of the evidence. <u>In re Tapang</u>, No. 11-59479-ASW, 2015 Bankr. LEXIS 1349, at *33 (Bankr. N.D. Cal. Apr. 17, 2015) (citing <u>In re Southmark Storage Associates Ltd. P'ship</u>, 130 B.R. 9, 10 (Bankr. D. Conn. 1991).

The court must make the factual finding of value based upon the testimony before it. The initial burden of proof is on the Debtors to establish that the value of the Alpha Property in Respondents' proof of claim — $185,000.00 — is not a correct value.

2.   The Debtors have met the burden of proof.

The court has reviewed the testimony, the declarations, and the exhibits. The Debtors have met their burden, overcoming a presumption in favor of Respondents that the value of the property as stated in their proof of claim is correct. Even the Palmer appraisal — either $5,000.00 or $15,000.00 less than set forth in the proof of claim — establishes that.

The more difficult question is whether the Respondents here have shown by a preponderance of the evidence the value of the property exceeds what is owed the first deed of trust. Respondents here have not met that burden.

Palmer was uncertain as to the value of the property. Palmer's "exterior only" appraisal concluded the value of the Alpha Property was $180,000.00. After inspecting the interior, Palmer reduced his estimate to $170,000.00. At trial, Palmer seemed to rest on the $180,000.00 value. But that contradicted his second appraisal where he had access to the interior of the Alpha Property. What's more, Palmer admitted that he did not have an opinion of the value of the Alpha Property "as it sits." At most, Palmer's testimony was inconclusive, at worst it was irrelevant.

Palmer's estimates to refurbish the Alpha Property were not credible. Toomey/Biehle consulted a recent home inspection report, as well as the former owner of the Milner Property, which all parties agreed was most similar to the Alpha Property. The inspection report confirmed the many deficiencies in the condition of the Alpha Property that were mentioned by Toomey/Biehle and Palmer in their respective reports. Palmer relied on a manual for an estimate of roof repair and conversations with a contractor acquaintance. Palmer admitted that he did not discuss all the conditions observed at the Alpha Property with the contractor.

Palmer's conclusions on value proved speculative since he admitted that some repairs would need to be done to bring the Alpha Property to a condition where it could be sold for $180,000.00. Palmer did not testify as to that assumption being a normal and reasonable assumption used by residential appraisers in the area to determine current fair market value of residential property.

All the appraisers agreed that none of the comparable sales used by any of them (with the possible exception of the Milner Property's former owner's purchase for $130,000.00) had similar conditions to those at the Alpha Property. That fact casts serious doubt on the relevance of Palmer's testimony that the median sale price for properties in the area of the Alpha Property sold in the prior 7-12 months was $195,000.00.

The largest discrepancy between the appraisers was the estimate necessary to refurbish the Alpha Property. The methodology used by Toomey/Biehle in this case was more credible

since it involved direct communication with the owner of the
comparable Milner Property. This method, along with Biehle's
personal experience in purchasing residences, refurbishing them
and selling them was unchallenged by Respondents.

Finally, there was no dispute that the use of the Alpha
Property by Debtors would continue to be as a residence. So, it
is speculative to add value to the Alpha Property as one would
expect if it was purchased as an investment. The Alpha Property
is not being held by the Debtors as an investment. So, the "as
is" or "where it sits" valuation is most relevant for purposes
of confirmation of Debtors' proposed Plan.


                              CONCLUSION

Though both experienced appraisers Toomey and Palmer were
problematic witnesses, after reviewing all the evidence and
considering the basis for all of the opinions, and for the
reasons set forth in this ruling, the court finds the relevant
value of the Alpha Property is $130,000.00. The Debtors' motion
is GRANTED. Debtors' counsel shall prepare an order in
conformance with this ruling.



**Dated:** Nov 22, 2019                    **By the Court**


                                          *René Lastreto II*
                                          **René Lastreto II, Judge**
                                          **United States Bankruptcy Court**

**Instructions to Clerk of Court**
**Service List - Not Part of Order/Judgment**


    The Clerk of Court is instructed to send the Order/Judgment
or other court generated document transmitted herewith to the
parties below.  The Clerk of Court will send the Order via the
BNC or, if checked   X  , via the U.S. mail.


Christopher A Milauckas
762 Alpha Street
Tulare CA 93274

Laurie Milauckas
762 Alpha Street
Tulare CA 93274

Michael H. Meyer
PO Box 28950
Fresno CA 93729-8950

David R. Jenkins
8050 N Palm Ave, Ste 300
Fresno CA 93711

Mark D. Johnson
12232 E Kings Canyon
Sanger CA 93657

Martin W. Phillips
8180 E Kaiser Blvd #100
Anaheim Hills CA 92808

Office of the U.S. Trustee
United States Courthouse
2500 Tulare Street, Room 1401
Fresno CA 93721